Filed 6/4/13; pub. order 6/24/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ALEXIS LEOS et al., | B241630 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC473673) |
| v. | |
| DARDEN RESTAURANTS, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel J. Buckley, Judge.  Reversed with directions.

Ogletree, Deakins, Nash, Smoak & Stewart, Beth A. Gunn and Jennifer L. Katz for Defendant and Appellant.

Kesluk & Silverstein, Douglas N. Silverstein, Lauren J. Morrison; The Rubin Law Corporation and Steven M. Rubin for Plaintiffs and Respondents.

_____

Plaintiffs filed this action against their former employer, alleging causes of action arising out of the termination of their employment. The employer filed a motion to compel arbitration pursuant to an arbitration provision contained in a document entitled, "Dispute Resolution Process" (DRP). When plaintiffs were hired, they signed an acknowledgement form stating they agreed to submit disputes to arbitration. They opposed the motion to compel arbitration on the ground that the arbitration provision in the DRP was unconscionable. The trial court ruled in plaintiffs' favor and denied the motion. Defendant appealed.

We conclude the trial court erred. Although the arbitration agreement is procedurally unconscionable, none of its provisions is substantively unconscionable. We therefore reverse the order denying the motion to compel arbitration.

# I

# BACKGROUND

The facts and allegations in this appeal are taken from the complaint and the declarations and exhibits submitted in connection with the motion to compel arbitration.

## A.    Complaint

On November 17, 2011, plaintiffs Alexis Leos and Jennifer Stucker (plaintiffs) filed this action against their former employer, Darden Restaurants, Inc. (Darden), alleging causes of action under the Fair Employment and Housing Act (FEHA) (Gov. Code, §§ 12900–12996) for sexual harassment, retaliation, failure to prevent harassment, and failure to investigate harassment. Plaintiffs asserted common law causes of action for constructive discharge in violation of public policy and wrongful termination in violation of public policy. They also sought declaratory relief to the effect that Darden's arbitration provision was unenforceable.

## B.    Motion to Compel Arbitration

On February 22, 2012, Darden filed a motion to compel arbitration pursuant to the DRP, which consists of 14 pages. Under the DRP, the parties must seek to resolve a dispute through four steps. The first step is the "open door" approach, which obligates the employee to bring a "workplace concern or dispute" to the attention of management for

2

possible resolution. If the open door approach does not resolve the workplace concern or dispute, an employee may submit the matter to "peer review," which requires that a dispute be presented to a panel of three employees. Each side is allowed 30 minutes to present its position to the panel, after which the panel issues a nonbinding decision. If either the employee or Darden is dissatisfied with the decision of the peer review panel, the dissatisfied party may request mediation within 30 days after the panel's decision. Otherwise, the panel's decision becomes final and binding. The third step, mediation, is conducted in accordance with the mediation rules of the American Arbitration Association (AAA). Darden will pay the costs and fees of the mediation service and the mediator. If the mediator, the employee, or Darden determines that further attempts to mediate the dispute are not "worthwhile," either the employee or Darden "can submit the matter to binding arbitration." Darden "will pay the arbitrator's fees and expenses, any costs for the hearing facility, and any costs of the arbitration service." The arbitration "will be conducted according to the Employment Dispute Resolution Rules of the [AAA]."

Plaintiff Stucker commenced employment with Darden in January 2010. On January 27, 2010, she signed a "Dispute Resolution Process Acknowledgement," which stated: "I have received and reviewed the Dispute Resolution Process (DRP) booklet. This booklet contains the requirements, obligations, procedures and benefits of the DRP. I have read this information and understand and agree to the terms and conditions of the DRP. I agree as a condition of my employment, to submit any eligible disputes I may have to the company's DRP and to abide by the provisions outlined in the DRP. I understand that this includes, for example, claims under state and federal laws relating to harassment or discrimination, as well as other employment-related claims as defined by the DRP. Finally, I understand that the company is equally bound to all of the provisions of the DRP."

Plaintiff Leos was hired on or about March 3, 2010, and on the same day, signed a Dispute Resolution Process Acknowledgment that contained the same language as the one signed by Stucker.

3

Darden filed its motion to compel arbitration pursuant to the California Arbitration Act (Code Civ. Proc., §§ 1281.2, 1281.4).  In its memorandum of points and authorities, Darden argued that the arbitration provision in the DRP satisfied the requirements set forth in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*).

Plaintiffs filed an opposition, asserting the arbitration provision was unconscionable.  In their supporting declarations, plaintiffs stated that they signed the DRP acknowledgement "as a condition of my employment"; they had "no choice but to sign [the acknowledgement]" to obtain employment; they were told they had to sign the acknowledgement "whether I wanted to or not"; and they were "not able to negotiate the terms of the [DRP]."[1]

The motion to compel arbitration was heard on April 11, 2012.  Before the hearing, the trial court had prepared a tentative ruling denying the motion on the ground that the arbitration provision was unconscionable.  At the conclusion of the hearing, the trial court adopted the tentative ruling as its order denying the motion.

Darden filed an appeal from the order.  (See Code Civ. Proc., § 1294, subd. (a).)

## II

## DISCUSSION

""""Whether an arbitration provision is unconscionable is ultimately a question of law."' . . . 'On appeal, when the extrinsic evidence is undisputed, as it is here, we review

---

[1] On appeal, Darden contends the trial court erroneously overruled two of its objections to the statements in plaintiffs' declarations.  Darden objected to the statement, "I never had a chance to review these documents before signing them."  We do not rely on that statement so the trial court's ruling, even if wrong, is harmless.  Darden also made boilerplate objections to the statement, "I was told that I had to sign this agreement, whether I wanted to or not."  The trial court properly overruled Darden's objection to this statement; it does not lack foundation or personal knowledge, is not conclusory, and falls within a hearsay exception for party admissions or authorized statements.  (See Evid. Code, §§ 1220, 1222.)

the contract de novo to determine unconscionability.'" (*Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1511–1512, citations omitted; accord, *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 174 (*Mercuro*).)

As a preliminary matter, the parties disagree as to whether the arbitration provision is governed by the Federal Arbitration Act (FAA) (9 U.S.C. §§ 1–16) or the California Arbitration Act (CAA) (Code Civ. Proc., §§ 1280–1294.2).

The FAA applies to a contract "evidencing a transaction *involving* commerce." (9 U.S.C. § 2, italics added.) As explained in *Hedges v. Carrigan* (2004) 117 Cal.App.4th 578, the United States Supreme Court has "'interpreted the term "involving commerce" in the [FAA] as the functional equivalent of the more familiar term "affecting commerce"— words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. . . . Because the statute provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause," . . . it is perfectly clear that the [FAA] encompasses a wider range of transactions than those actually "in commerce"—that is, "within the flow of interstate commerce," . . .' . . . 'Congress' Commerce Clause power "may be exercised in individual cases without showing any specific effect upon interstate commerce" if in the aggregate the economic activity in question would represent "a general practice . . . subject to federal control." . . . Only that general practice need bear on interstate commerce in a substantial way.'" (*Hedges v. Carrigan*, at pp. 585–586, citations omitted.)

In *Woolls v. Superior Court* (2005) 127 Cal.App.4th 197, the Court of Appeal addressed whether the FAA governed a dispute between a homeowner renovating his single family home and the contractor retained to perform the work. The Court of Appeal stated: "Because [the contractor] has not presented a factual record to establish [that the parties' agreement involves interstate commerce], his reliance on *Hedges v. Carrigan*[, *supra*,] 117 Cal.App.4th 578 is misplaced. *Hedges* found an agreement to purchase a single family residence 'was a contract which evidenced a transaction "involving commerce" within the meaning of [the FAA].' . . . There, the evidence showed, '[t]he anticipated financing involved the use of a . . . Federal Housing Administration home loan

5

which is subject to the jurisdiction of the United States Department of Housing and Urban Development headquartered in Washington, D.C. Further, the various copyrighted forms used by the parties and their brokers could only be utilized by members of the National Association of Realtors.' . . . [¶] Unlike the showing made in cases such as . . . *Hedges*, [the contractor] has not presented any *facts* to show the instant transaction involved interstate commerce. This case is akin to *Steele v. Collagen Corp.* (1997) 54 Cal.App.4th 1474, 1490, wherein the party asserting [the application of the FAA] 'made no attempt to establish its actions' fell within the ambit of federal law. We conclude [the contractor] failed to meet his burden of establishing the FAA [applies] . . . ." (*Woolls v. Superior Court*, at pp. 213–214, citations omitted; see *Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1207 [party seeking to compel arbitration has burden of proving that underlying agreement involves interstate commerce]; *Shepard v. Edward Mackay Enterprises, Inc.* (2007) 148 Cal.App.4th 1092, 1099–1101 [discussing whether FAA applies in context of real estate transactions].)

In the present case, the DRP recited that it "is governed by the Federal Arbitration Act *or whatever state law is required to authorize and/or enforce the arbitration*." (Italics added.) Without evidentiary support, the DRP stated that it "is used throughout the United States." Although Darden contends in its opening brief that it is "doing business in all 50 states and around the world, in the operation of a restaurant—which involved numerous interstate transactions as part of [plaintiffs'] day-to-day job duties," Darden's citations to the record do not support that contention. Further, Darden's motion to compel arbitration was brought pursuant to the CAA. Because the DRP does not unequivocally state that it is governed by the FAA, and Darden has not offered any evidence that plaintiffs' employment or any relevant transaction involved interstate commerce, we conclude that the CAA governs this case. We note, however, that regardless of whether the FAA or the CAA applies, we would reach the same conclusion: The arbitration provision is not substantively unconscionable and is therefore enforceable.

6

## A. Doctrine of Unconscionability

"In 1979, the Legislature enacted Civil Code section 1670.5, which codified the principle that a court can refuse to enforce an unconscionable provision in a contract. . . . As section 1670.5, subdivision (a) states: 'If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.' Because unconscionability is a reason for refusing to enforce contracts generally, it is also a valid reason for refusing to enforce an arbitration agreement under [the CAA], which . . . provides that arbitration agreements are 'valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.' The United States Supreme Court, in interpreting the same language found in section 2 of the FAA (9 U.S.C. § 2), recognized that 'generally applicable contract defenses, such as fraud, duress, or *unconscionability*, may be applied to invalidate arbitration agreements . . . .' . . .

". . . '[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on '"oppression"' or '"surprise"' due to unequal bargaining power, the latter on '"overly harsh"' or '"one-sided"' results. . . . 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' . . . But they need not be present in the same degree. . . . [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz*, *supra*, 24 Cal.4th at p. 114, citations omitted; accord, *Bruni v. Didion* (2008) 160 Cal.App.4th 1272, 1288–1289.) "The party resisting arbitration bears the burden of proving unconscionability." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 247.)

"'The procedural element of unconscionability focuses on two factors: oppression and surprise. . . . "'Oppression' arises from an inequality of bargaining power which results

in no real negotiation and 'an absence of meaningful choice.'" . . . "'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." . . .'" (*Bruni v. Didion*, *supra*, 160 Cal.App.4th at p. 1288.)

"Of course, simply because a provision within a contract of adhesion is not read or understood by the nondrafting party does not justify a refusal to enforce it. The unbargained-for term may only be denied enforcement if it is also *substantively* unreasonable. . . . Substantive unconscionability focuses on whether the provision is overly harsh or one-sided and is shown if the disputed provision of the contract falls outside the 'reasonable expectations' of the nondrafting party or is 'unduly oppressive.' . . . Where a party with superior bargaining power has imposed contractual terms on another, courts must carefully assess claims that one or more of these provisions are one-sided and unreasonable." (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 88, citations omitted.)

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh *or* one-sided. . . . A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience."'" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, *supra*, 55 Cal.4th at p. 246, citations omitted, italics added.) Simply put, the contract term must be either (1) overly harsh *or* (2) so one-sided as to shock the conscience. (See *id.* at p. 248, citing *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1213 ["substantive element . . . traditionally involves contract terms that are so one-sided as to 'shock the conscience,' *or* that impose harsh or oppressive terms" (italics added)].)

## B. Procedural Unconscionability

Because plaintiffs were required to sign the DRP acknowledgement as a condition of employment, were unable to negotiate the terms of the DRP, and had no meaningful choice in the matter, the DRP was oppressive and procedurally unconscionable. (See *Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 796; *Martinez v. Master*

8

*Protection Corp*. (2004) 118 Cal.App.4th 107, 114.) But the arbitration provision was not "'"*hidden* in a *prolix* printed form"'"" (*Bruni v. Didion*, *supra*, 160 Cal.App.4th at p. 1288, italics added) and therefore did not involve an element of surprise. On the contrary, the arbitration provision was prominently featured as part of the DRP, and the DRP was a stand-alone agreement that addressed only one subject: the use of alternative dispute resolution in lieu of a civil suit.

## C.     Substantive Unconscionability

Plaintiffs contend the arbitration provision is substantively unconscionable in five respects. We discuss them in turn.

### 1. Employer's Right to Modify the DRP

The DRP states that it "may be updated from time to time as required by law." Plaintiffs contend this clause renders the entire arbitration provision illusory and unenforceable or, in the alternative, constitutes an unconscionable clause itself. We disagree with both contentions.

As plaintiffs correctly point out, "'[A]n arbitration agreement allowing one party the *unfettered* right to alter the arbitration agreement's existence or its scope is illusory,'" quoting *Dumais v. American Golf Corp*. (10th Cir. 2002) 299 F.3d 1216, 1219. (Italics added.) Plaintiffs also argue "[t]he fact that Darden reserves the right to alter, amend, or modify the DRP at its sole and absolute discretion at any time with or without notice creates no real promise, and therefore, insufficient consideration to support an enforceable agreement to arbitrate," citing *Floss v. Ryan's Family Steak Houses, Inc.* (6th Cir. 2000) 211 F.3d 306, 315–316. And in *Ingle v. Circuit City Stores, Inc*. (9th Cir. 2003) 328 F.3d 1165, the court of appeals stated: "By granting itself the sole authority to amend or terminate the arbitration agreement, [the employer] proscribes an employee's ability to consider and negotiate the terms of her contract. Compounded by the fact that this contract is adhesive in the first instance, this provision embeds its adhesiveness by allowing only [the employer] to modify or terminate the terms of the agreement. Therefore, we conclude that the provision affording [the employer] the unilateral power to terminate or modify the contract is substantively unconscionable." (*Id.* at p. 1179, fn. omitted.)

9

But under California law, an employer's unilateral right to modify an arbitration provision is not unfettered; it is subject to the limitations imposed by the covenant of good faith and fair dealing. In *24 Hour Fitness, Inc. v. Superior Court*, *supra*, 66 Cal.App.4th 1199 (*24 Hour Fitness*), a female employee of 24 Hour Fitness, Inc., doing business as 24 Hour Nautilus (Nautilus), filed suit against her employer and several male employees, alleging sexual harassment. Nautilus and the individual defendants filed motions for summary judgment and summary adjudication, seeking to establish that the employee had to arbitrate her claim as mandated by the "Arbitration of Disputes" section of Nautilus's "Personnel Handbook." A separate document entitled, "Employment Arbitration Procedure Manual," was incorporated by reference into the Personnel Handbook.

The employee opposed the motions on the ground that the Personnel Handbook was illusory because Nautilus could amend it at anytime. The handbook contained a provision stating: "'I acknowledge that Nautilus reserves the right to change any provision in this Handbook at any time for any reason without advance notice. Though Nautilus can make changes, I understand that nothing in this Handbook can be modified or deleted, nor anything added, in any way by oral statement or practice. Only the President of Nautilus can change this Handbook and the change must be in writing. If Nautilus makes any material changes, it will give me a copy of them.'" (*24 Hour Fitness*, *supra*, 66 Cal.App.4th at pp. 1213–1214.) When hired, the employee had signed an acknowledgment form, reciting that she had received and read the handbook and had also agreed to arbitrate all claims as provided in the arbitration procedure manual. (*Id.* at p. 1205.) The trial court denied the defendants' motions. All parties sought writ relief.

In reversing the trial court as to all but one defendant, the Court of Appeal concluded that the modification provision was not illusory, saying in part: "'"[W]here the contract specifies performance the fact that one party reserves the power to vary it is not fatal if the exercise of the power is subject to prescribed or implied limitations such as the duty to exercise it in good faith and in accordance with fair dealings."' . . . Nautilus's discretionary power to modify the terms of the personnel handbook [by written] notice indisputably carries with it the duty to exercise that right fairly and in good faith. . . . So

10

construed, the modification provision does not render the contract illusory." (*24 Hour Fitness*, *supra*, 66 Cal.App.4th at p. 1214, citations omitted; accord, *Martinez v. Scott Specialty Gases, Inc*. (2000) 83 Cal.App.4th 1236, 1246.)

In *Peleg v. Neiman Marcus Group, Inc*. (2012) 204 Cal.App.4th 1425, we held that, under California law, an arbitration agreement is illusory and thus unenforceable if an employer's unilateral modifications apply where an employee's claims have already accrued or are known to the employer. We also discussed the application of the covenant of good faith and fair dealing, stating: "A unilateral modification provision that is silent as to whether contract changes apply to claims, accrued or known, is impliedly restricted by the covenant [of good faith and fair dealing] so that changes do not apply to such claims. Under this analysis, the arbitration agreement in *24 Hour Fitness* is not illusory. If, however, a modification provision expressly addresses whether contract changes apply to claims that have accrued or are known to the employer, the covenant cannot create implied terms that contradict the express language. . . . An arbitration agreement that expressly *exempts* all claims, accrued or known, from contract changes is valid and enforceable without resort to the covenant. If, on the other hand, an arbitration agreement expressly applies a contract change to such claims, the covenant cannot vary the plain language, and the agreement is illusory." (*Id.* at p. 1465.)

The modification clause in this case does not grant Darden an *unfettered* right to change the terms of the arbitration provision. Rather, Darden reserves the right to modify the arbitration provision "as required by law." In our view, the modification clause is neither overly harsh or so one-sided as to shock the conscience. We fail to understand how a clause permitting a modification *as required by law* can itself be unlawful. If a particular modification is required by law, then the change is necessary to avoid the very result that plaintiffs seek here—the invalidation of the arbitration provision. An employer should not be bound in perpetuity by the terms of an existing arbitration provision if a judicial decision or statute renders the provision invalid in some respect.

Plaintiffs assert that the modification clause permits Darden to require that only employee claims be submitted to arbitration, exempting its own claims from the arbitration

11

process. But that type of modification would not be *required by law*. On the contrary, it would be unlawful. (See, e.g., *Armendariz, supra*, 24 Cal.4th at pp. 115–118.) It would also be inconsistent with the covenant of good faith and fair dealing. Thus, to be lawful, an arbitration provision must require that both sides submit their respective disputes to arbitration. (*Ibid.*) Here, the DRP states that it is "the sole means for resolving covered employment-related disputes, instead of court actions. *Disputes eligible for DRP* must be resolved only through DRP, with the final step being binding arbitration heard by an arbitrator. This means *DRP-eligible disputes* will NOT BE RESOLVED BY A JUDGE OR JURY. Neither the Company nor the Employee may bring *DRP-eligible disputes* to court. The Company and the Employee waive all rights to bring a civil court action for these disputes." (Italics added.)

The DRP exempts certain types of claims from arbitration: claims for workers' compensation or unemployment insurance benefits; claims "that by law cannot be subjected to mandatory arbitration"; and claims regarding wage scales, employee benefits, work rules, food quality, service standards, or company policies and procedures unless the dispute is "brought pursuant to a specific federal or state statute, or other applicable legal standard." In light of these exemptions, the DRP uses the term "DRP-eligible disputes" to refer to claims not falling within one of the exemptions.

In sum, the clause granting Darden the right to modify the arbitration provision in accordance with the law does not render arbitration illusory; employees and Darden are both required to submit DRP-eligible claims to arbitration. Nor is the modification clause substantively unconscionable.

### 2. Limitations on Discovery and the Arbitration Hearing

Plaintiffs challenge three clauses in the DRP's arbitration provision that govern discovery and the arbitration hearing. First, "[t]he arbitrator has the authority to authorize reasonably needed discovery *in addition to* that provided by the American Arbitration

12

Association Rules."  (Italics added.)[2]  Second, "[t]he arbitration hearing will start no later than ninety (90) days following the date of the selection of the arbitrator.  However, the selected arbitrator may extend the hearing date if good cause is shown by either party."  And third, "[t]he arbitrator has the authority to set the duration of the hearing after conferring with both parties.  Typically, the arbitration hearing shall last no longer than two (2) days.  Complex cases may require additional time.  The Employee and the Company representative will each have one (1) day to present their side of the dispute.  The arbitrator may, for good cause, extend the duration of the hearing and adjust the timing of the presentations.  Also, the arbitrator may extend the hearing and any related discovery to whatever extent is necessary to meet any applicable legal requirements."

As a federal district court has explained in deciding the validity of these same clauses:  "Plaintiff contends that the provisions concerning discovery and the duration of the hearing hinder his ability to vindicate his statutory rights and therefore fail to satisfy *Armendariz.*  Specifically, Plaintiff argues, the arbitration agreement does not allow for adequate time for discovery, because it provides that the arbitration hearing start no later than 90 days following the selection of the arbitrator.  He also argues that it does not allow adequate time for the duration of the hearing, which is set at two days.  Both of these time limitations are subject to change by the arbitrator, for good cause. . . . These limitations, according to Plaintiff, present unconscionable barriers to the vindication of his rights because as the plaintiff, he will require more time for discovery and more time to present his case at arbitration compared to the [employer].  Moreover, the provision allowing the arbitrator to adjust the schedule for good cause is inadequate, Plaintiff contends, because he would have to file an 'expensive' motion for such relief from the arbitrator (presumably, attorneys' fees).

---

[2] The AAA rules state:  "The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration."

"Plaintiff's arguments are unpersuasive. One of the benefits of arbitration is that it generally allows parties to reach a resolution on the merits more quickly than is possible in court. Thus, California courts do not by any means require that an arbitration agreement permit 'unfettered discovery.' *Mercuro*[, *supra*,] 96 Cal.App.4th [at] 184. Parties may certainly 'agree to something *less than* the full panoply of discovery provided in [a civil action].' *Armendariz*, 24 Cal.4th at 105-06.[3]

"Courts have upheld more stringent limitations on discovery. In a case that Plaintiff himself cites for a different point, the arbitration agreement limited the parties to three depositions and an aggregate of 30 discovery requests of any kind, with additional discovery requests to be granted only upon a showing of good cause. *Mercuro*, [*supra*,] 96 Cal.App.4th at 182. Yet the court rejected plaintiff's argument that these limitations were unconscionable . . . .' *Id.* at 183.

"Something more than Plaintiff's speculative assertions about his ability to vindicate his rights is needed to invalidate agreed-to discovery rules. *Mercuro* and other cases make clear that whether limitations on discovery violate the principles in *Armendariz* depends on the complexity of the claims, the nature of proof required, the precise discovery that the arbitration agreement does permit, and the burdens that the agreement imposes on the party who seeks to exceed the limits. *See Ontiveros v. DHL Exp. (USA), Inc.* [(2008)] 164 Cal.App.4th 494, 512 (invalidating provision limiting depositions to one individual and any expert witness designuated by another party because plaintiff would need to take at least 15 to 20 depositions and the arbitration agreement's '*substantial need*' standard imposed too high a burden on plaintiff); *Fitz v. NCR Corp.* [(2004)] 118 Cal.App.4th 702, 717-18 (invalidating limitation on number of depositions because

---

[3] Under the CAA, the parties have the same right to discovery as in a civil action. (See Code Civ. Proc., § 1283.05, subd. (a); *id.*, §§ 1985–1997 [addressing use of subpoenas]; *id.*, §§ 2016.020–2036.050 [addressing methods of discovery in civil actions].)

plaintiff demonstrated that a standard of '*compelling need*' unfairly required parties to demonstrate that a fair hearing would be 'impossible' without additional discovery).

"Plaintiff has cited no authority finding presumptive time limits on discovery and the duration of the hearing, such as the limits in the DRP, to be unconscionable . . . . Nor has he shown how the discovery provision in the DRP would necessarily prevent him from vindicating his statutory rights in his particular case. Therefore, the Court finds that the minimum requirement of adequate discovery has been met." (*Rutter v. Darden Restaurants, Inc*. (C.D.Cal., Nov. 18, 2008, No. CV 08-6106 AHM) 2008 WL 4949043, pp. *5–*6, citation omitted, some italics added.)

"[A]rbitration is meant to be a streamlined procedure. Limitations on discovery . . . is one of the ways streamlining is achieved. In *Armendariz*, the [Supreme Court] stated that the parties were entitled to discovery sufficient to vindicate their claims. . . . The court also acknowledged that discovery limitations are an integral and permissible part of the arbitration process. . . . *Armendariz* specifically recognized that parties may agree to something less than the full panoply of discovery permitted [in civil actions]." (*Dotson v. Amgen, Inc*. (2010) 181 Cal.App.4th 975, 983, citations omitted.)

"[I]n *Roman* [*v. Superior Court* (2009) 172 Cal.App.4th 1462], our colleagues in Division Seven pointed out that the rules of the American Arbitration Association (AAA) give the arbitrator authority to limit discovery and 'to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of . . . arbitration.' . . . The Court of Appeal rejected the argument that the [AAA discovery] provision was unconscionable because it unfairly delegates to the arbitrator the absolute discretion to deny depositions, contrary to the rules of civil discovery . . . . The Court [of Appeal] said: 'In *Armendariz*, . . . the Supreme Court rejected an employee's similar claim that a purportedly inadequate provision for discovery in an arbitration agreement was a proper ground for denying arbitration of their FEHA claims. Although the [Supreme] Court observed "some discovery is often necessary for vindicating a FEHA claim" . . . , it held "whether or not the employees in this case are

entitled to the full range of discovery provided in [civil actions], they are at least entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, *as determined by the arbitrator(s) . . . .*" . . .' . . . . The [Court of Appeal] concluded: 'There appears to be no meaningful difference between the scope of discovery approved in *Armendariz* and that authorized by the AAA employment dispute rules . . . .'" (*Dotson v. Amgen, Inc.*, *supra*, 181 Cal.App.4th at pp. 983–984, citations & fn. omitted.) As noted, the AAA employment dispute rules apply under the DRP, and the arbitrator is authorized to permit discovery *in addition* to what the AAA rules provide.

Here, plaintiffs "assume[] that the arbitrator would not be fair in determining whether additional [discovery was] needed. . . . Indeed, it is quite the opposite. We assume that the arbitrator will operate in a reasonable manner in conformity with the law." (*Dotson v. Amgen, Inc.*, *supra*, 181 Cal.App.4th at p. 984.) Unlike the discovery limitations in *Ontiveros v. DHL Exp. (USA), Inc.*, *supra*, 164 Cal.App.4th 494, and *Fitz v. NCR Corp.*, *supra*, 118 Cal.App.4th 702 (*Fitz*), "the discovery provision in this case does not require a showing of 'substantial' or 'compelling' need . . . to grant further discovery." (*Dotson*, at p. 984.) "[T]he agreement allows for '[e]ither party [to] apply to the arbitrator for further discovery' upon a showing of [good] cause. . . . Thus, the discovery provision is not substantively unconscionable." (*Abeyrama v. J.P. Morgan Chase Bank* (C.D.Cal., June 22, 2012, No. CV12-00445 DMG) 2012 WL 2393063, p. *4.)

In short, because the DRP's limitations on discovery, the timing of the hearing, and the length of the hearing are subject to change upon the arbitrator's determination of good cause, the limitations do not render the arbitration provision unconscionable.

### 3. Cost of Reporter's Transcript

Under the DRP, "the Employee may choose to arrange for a court reporter at [his or her] own cost." Plaintiffs contend this clause unfairly burdens them with arbitration expenses. We disagree. Under *Armendariz*, an employer in an FEHA action must "pay all types of costs that are *unique to arbitration*." (*Armendariz*, *supra*, 24 Cal.4th at p. 113, italics added.) The cost of a reporter's transcript is not that type of expense. Even if

16

plaintiffs' causes of action were adjudicated in a judicial forum, plaintiffs would have to pay for a reporter's transcript; the employer would not be required to obtain a reporter's transcript on the employees' behalf.  As provided by the California Rules of Court, "If the services of an official court reporter are not available for a hearing or trial *in a civil case*, a party may arrange for the presence of a certified shorthand reporter to serve as an official pro tempore reporter.  It is *that party's responsibility to pay the reporter's fee* for attendance at the proceedings, but the expense may be recoverable as part of the costs, as provided by law."  (Cal. Rules of Court, rule 2.956(c), italics added.)

Because an employee would have to pay for a reporter's transcript in a civil action, Darden may impose the same cost requirement in an arbitration proceeding without running afoul of *Armendariz* or the doctrine of unconscionability.

### 4.  Availability of Provisional Relief

The arbitration provision in the DRP states:  "The arbitrator has the same authority as a court of law to grant requested relief; this would include relief requested regarding temporary restraints and preliminary injunctive remedies.  However, this provision does not prevent either the Employee or the Company from requesting available temporary or preliminary injunctive remedies from an appropriate court, provided that the request does not remove the dispute from final resolution by the arbitrator.  The request for temporary or preliminary injunctive remedies does not waive the requesting party's right to arbitrate claims covered by the DRP."  Plaintiffs argue that, because of this language, the arbitration provision lacks mutuality and is not bilateral.  In other words, the arbitration provision exempts the causes of action that Darden would be likely to bring.  We conclude otherwise.

The CAA contains a provision similar to the one in the DRP.  Section 1281.8, subdivision (b) (section 1281.8(b)) of the CAA provides:  "A party to an arbitration agreement may file in the *court* in the county in which an arbitration proceeding is pending, or if an arbitration proceeding has not commenced, in any proper *court*, an application for a *provisional remedy* in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered

17

ineffectual without provisional relief." (Code Civ. Proc., § 1281.8, subd. (b), italics added.) The CAA defines "provisional remedy" to include "[p]reliminary injunctions and temporary restraining orders." (*Id.*, § 1281.8, subd. (a)(3).) Section 1281.8(b) "'was enacted primarily to allow a party to an arbitration [or subject to an arbitration agreement] to obtain provisional judicial remedies without waiving the right to arbitrate, as some early cases had suggested.'" (*Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1537 (*Stirlen*).)

In *Stirlen*, *supra*, 51 Cal.App.4th 1519, the employer exempted from arbitration "'[a]ny action initiated by the Company seeking specific performance or injunctive or other equitable relief in connection with *any breach or violation of [its intellectual property rights]*.'" (*Stirlen*, at p. 1528, italics added; see *Mercuro*, *supra*, 96 Cal.App.4th at pp. 177–178 [discussing *Stirlen*].) The arbitration agreement also limited the parties' remedies to "'a money award not to exceed the amount of actual damages for breach of contract'" and excluded "'any other remedy at law or in equity, including but not limited to other money damages, exemplary damages, specific performance, and/or injunctive relief.'" (*Stirlen*, at p. 1529.)

The Court of Appeal concluded that the agreement's lack of mutuality was unconscionable, explaining: "One of the most significant discrepancies, of course, is the unilateral restriction on employee remedies and the nature of the rights employees are deprived of in this manner. While [the employer] is deprived of no common law or statutory remedies that may be available to it under [the intellectual property provisions] of the employment contract, remedies available to employees in employment disputes are severely curtailed. Not only are employees denied punitive damages for tort claims, they are also denied relief for statutory claims . . . . [The employer's] arbitration clause not only deprives employees of the exemplary damages and equitable relief available under [some] federal statutes, but deprives them as well of the reasonable attorney fees, including litigation expenses, and costs, that prevailing parties can obtain under those statutes. . . . The only remedy left to employees—actual damages for breach of contract—may bear no relation whatsoever to the extent of the wrong and the magnitude of the injuries suffered at

18

the hands of the employer. This would amount to denial of the underlying cause of action, which would be preserved in name only." (*Stirlen*, *supra*, 51 Cal.App.4th at pp. 1539–1540.)

The court continued: "The mandatory arbitration requirement can only realistically be seen as applying primarily if not exclusively to claims arising out of the termination of employment, which are virtually certain to be filed against, not by, [the employer]. [The employer] identifies no provision of the employment contract and no statute likely to give rise to a claim [it] would be compelled to submit to arbitration. The only 'employment disputes' likely to be initiated *by* [*the employer*]—such as claims that *an employee violated a non-competition agreement or divulged confidential information*—need not be arbitrated. [¶] . . . [¶] In short, the arbitration clause provides the employer more rights and greater remedies than would otherwise be available and concomitantly deprives employees of significant rights and remedies they would normally enjoy." (*Stirlen*, *supra*, 51 Cal.App.4th at pp. 1540–1542, italics added.)

In *Mercuro*, *supra*, 96 Cal.App.4th 167, "[t]he arbitration agreement specifically cover[ed] claims for breach of express or implied contracts or covenants, tort claims, claims of discrimination based on race, sex, age or disability, and claims for violation of any federal, state or other governmental constitution, statute, ordinance, regulation or public policy. Thus the agreement [required] arbitration of the claims employees [were] most likely to bring against [the employer]. On the other hand, the agreement specifically exclude[d] 'claims for injunctive and/or other equitable relief *for intellectual property violations, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information . . . .*' Thus the agreement exempt[ed] from arbitration the claims [the employer was] most likely to bring against its employees." (*Id.* at pp. 175–176, italics added.) The Court of Appeal concluded that the lack of mutuality rendered the arbitration agreement unconscionable. (*Id.* at p. 179; see *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 114–115 [arbitration agreement lacked mutuality and was unconscionable because it exempted employer's claims for unfair competition and unauthorized disclosure of trade secrets or confidential information].)

19

In *Fitz*, *supra*, 118 Cal.App.4th 702, an employer informed its employees about a new arbitration policy by sending them a brochure. A letter accompanying the brochure stated that "the new policy would be used to settle concerns over almost anything at work, ranging from disagreements over assignments to perceived discriminatory treatment." (*Id.* at p. 708.) But the arbitration policy "was not to be used 'to resolve disputes over *confidentiality/non-compete agreements or intellectual property rights.*'" (*Id.* at p. 709, italics added.) Relying on *Stirlen*, *supra*, 51 Cal.App.4th at pages 1528 and 1537 (see *Fitz*, at pp. 723–724), the Court of Appeal in *Ftiz* concluded that the lack of mutuality was unconscionable, saying: "An agreement may be unfairly one-sided if it compels arbitration of the claims more likely to be brought by the weaker party but exempts from arbitration the types of claims that are more likely to be brought by the stronger party. . . . [¶] . . . [¶] [The employer] asserts that the [arbitration] policy is 'completely bilateral' because the policy does not carve out particular types of claims where employees are required to arbitrate, but the company is permitted to seek redress for the same claim in a judicial forum. . . . [The employer] states that both the company and [an employee] may submit disputes regarding noncompete agreements and intellectual property rights to the courts. Though [the employer] cites cases where employees have filed actions against employers over noncompete agreements and intellectual property claims, it is far more often the case that employers, not employees, will file such claims. . . .

"The [arbitration] policy is unfairly one-sided because it compels arbitration of the claims more likely to be brought by [an employee], the weaker party, but exempts from arbitration the types of claims that are more likely to be brought by [the employer], the stronger party. . . . [¶] The [arbitration] policy fails to overcome the *Armendariz* threshold, which states that arbitration agreements imposed in adhesive contexts lack basic fairness if they require one party but not the other to arbitrate all claims arising out of the same transaction or occurrence. . . . For example, in a wrongful termination dispute where the employee claims age discrimination and [the employer] argues the employee was fired for divulging trade secrets to a competitor, the employee is required to arbitrate her claim

20

while [the employer] is permitted to [proceed in a judicial forum]." (*Fitz, supra*, 118 Cal.App.4th at pp. 724–725, citation omitted.)

We agree with *Stirlen*, *Mercuro*, and *Fitz* but not with the analysis of mutuality in *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387 (*Trivedi*). There, an employer-employee arbitration agreement provided in part: "'[P]rovisional injunctive relief may, but need not, be sought in a court of law while arbitration proceedings are pending, and any provisional injunctive relief granted by such court shall remain effective until the matter is finally determined by the Arbitrator.'" (*Trivedi*, at p. 396.) The Court of Appeal concluded that the language authorizing provisional injunctive relief was coextensive with section 1281.8(b) of the CAA. (*Trivedi*, at pp. 396–397.) Nevertheless, the court found the clause unconscionable, reasoning that "allowing the parties access to the courts only for injunctive relief favors [the employer], because it is 'more likely that . . . the employer[] would seek injunctive relief.' While the trial judge did not cite authority supporting this conclusion, it is not a novel or unsupportable proposition." (*Id.* at p. 397.) The Court of Appeal cited *Mercuro* and *Fitz* as support for the trial court's conclusion. (*Ibid.*)

We decline to follow *Trivedi* for three reasons. First, *Mercuro* and *Fitz* do not suggest that an arbitration clause similar to section 1281.8(b) is unconscionable. Both of those cases stand for the proposition that an arbitration agreement is unconscionable if it exempts claims likely to be brought by an employer but requires arbitration of claims likely to brought by an employee. Although the unconscionable provision in *Mercuro* authorized the parties to seek injunctive relief in a judicial forum, it permitted that type of relief only for claims the employer was likely to bring: "'intellectual property violations, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information.'" (*Mercuro, supra*, 96 Cal.App.4th at p. 176.) Similarly, in *Fitz*, the unconscionable agreement exempted from arbitration the type of claims only an employer would bring: "'disputes over confidentiality/non-compete agreements or intellectual property rights.'" (*Fitz, supra*, 118 Cal.App.4th at p. 709.) Here, the arbitration provision does not exempt from arbitration any claims that Darden is more

21

likely to pursue, and the provision allowing the parties to obtain provisional remedies in court is not tied to any type of claim.

Second, we cannot say that Darden is more likely to seek injunctive relief than an employee. In the present case, for example, the complaint alleges six causes of action. Four of those causes of action are based on the FEHA, which authorizes an employee to seek injunctive relief. (See Gov. Code, § 12965, subd. (c)(3); *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 131–132.) Further, as *Stirlen* pointed out, the Age Discrimination in Employment Act of 1967 (29 U.S.C. §§ 621–634) expressly permits an employee to seek "equitable relief" (*id.*, §§ 626(c)(2), 633a(c)), and, under the public accommodation provisions of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101–12213), injunctive relief is available (*id.*, § 12188(a)(2)). (See *Stirlen*, *supra*, 51 Cal.App.4th at p. 1540.) In addition, Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e to 2000e-4) also authorizes injunctive relief (*id.*, § 2000e-5(g)(1)).

Third, because the DRP is subject to the CAA, section 1281.8(b) would apply regardless of the analogous provision in the DRP. Put another way, an arbitration agreement governed by the CAA permits a party to seek provisional remedies, such as a preliminary injunction, in court even if the arbitration provision does not expressly authorize the parties to seek such relief. This is so because, as noted, section 1281.8(b) is part of the CAA. We fail to see how the provisional relief clause in the DRP is unconscionable given that section 1281.8(b) would be read into the DRP in any event. We are aware of no authority for the proposition that a right conferred by the CAA may be unconscionable.

It follows that the DRP's provisional remedy language is neither overly harsh nor so one-sided as to shock the conscience.

### 5. Prohibition of Class and Collective Actions

The DRP provides: "The arbitrator will have no right or authority to hear or rule on any dispute brought by any person as a class action, collective action or on behalf of any other person or entity . . . . The arbitrator has no jurisdiction to certify any group of current

22

or former employees, or applicants for employment, as a class or collective action in any arbitration proceeding."

Plaintiffs challenge this prohibition on the ground that it conflicts with the National Labor Relations Act (29 U.S.C. §§ 151–168) as interpreted in *D.R. Horton* (2012) 357 NLRB No. 184. We reject plaintiffs' argument for two reasons. First, they have not brought a class action or a collective action. Rather, this is an action by two individuals seeking relief for themselves only. Because the DRP's prohibition of class and collective actions has no effect on plaintiffs' ability to pursue their claims as pleaded, the purported unconscionability of that prohibition is irrelevant in this case. Second, we agree with other Courts of Appeal that *D.R. Horton* does not invalidate class or collective action waivers in an arbitration agreement. (See *Truly Nolen of America v. Superior Court* (2012) 208 Cal.App.4th 487, 514–515; *Nelsen v. Legacy Partners Residential, Inc*. (2012) 207 Cal.App.4th 1115, 1132–1134.)

For the first time on appeal, plaintiffs argue that the DRP's prohibition of class and collective actions is invalid under *Gentry v. Superior Court* (2007) 42 Cal.4th 443. This argument fails for three reasons. First, as with plaintiffs' contention based on *D.R. Horton*, the question of whether *Gentry* invalidates a class or collective action waiver is irrelevant in a case brought on an individual basis. Second, because plaintiffs did not rely on *Gentry* in the trial court, we decline to address whether *Gentry* was overruled by *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [131 S.Ct. 1740]. (See *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564 [argument not raised in trial court is forfeited on appeal]; *Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591–592 [same].) And third, plaintiffs have not made the evidentiary showing required by *Gentry* to invalidate a class or collective action waiver. (See *Gentry*, at pp. 457–463.)

In sum, the DRP's arbitration provision is not substantively unconscionable, and the trial court therefore erred in denying the motion to compel arbitration. Any request for appellate attorney fees should be presented in the first instance to the trial court on remand. (See Cal. Rules of Court, rule 3.1702(a), (c).)

23

### III

### DISPOSITION

The order is reversed, and, on remand, the trial court shall enter a new order granting the motion to compel arbitration.  Appellant is entitled to costs on appeal.


MALLANO, P. J.

We concur:


ROTHSCHILD, J.


CHANEY, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ALEXIS LEOS et al., | B241630 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC473673) |
| v. | |
| DARDEN RESTAURANTS, INC., | CERTIFICATION AND ORDER FOR PUBLICATION |
| Defendant and Appellant. | |

The opinion in the above-entitled matter filed on June 4, 2013, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports, and it is so ordered.


MALLANO, P.J.          ROTHSCHILD, J.          CHANEY, J.